**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3564-22

JUDY WOODY,

    Plaintiff-Appellant,

v.

HORATIO DAUB, MD,
and VIRTUA FAMILY
MEDICINE CENTER,

    Defendants-Respondents.

_____

Argued September 18, 2024 – Decided November 14, 2024

Before Judges Gilson, Firko, and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Docket No. L-1078-18.

Mark J. Molz argued the cause for appellant.

John S. Rigden argued the cause for respondents (Parker McCay, PA, attorneys; John S. Rigden and Kevin B. Maginnis, on the brief).

PER CURIAM

In this medical malpractice matter, plaintiff Judy Woody appeals from the trial court's order of judgment dismissing her complaint. Plaintiff filed a complaint against defendants Horatio Daub, M.D. and Virtua Family Medicine Center, alleging Daub deviated from the standard of care for failing to diagnose plaintiff with diabetic ketoacidosis on May 2, 2016, which ultimately led to her hospitalization from May 3 to 8, 2016. We affirm.

I.

Viewed in the light most favorable to plaintiff, Templo Fuente De Vida Corp. v. National Union Fire Insurance Co. of Pittsburgh, 224 N.J. 189, 199 (2016), the pertinent facts are as follows. Dr. Daub began treating plaintiff in 2001. In July 2013, Daub ordered a blood test for plaintiff and the results had an A1C[1] reading of 7.0. Two years later, on January 9, 2015, Daub again ordered a blood test for plaintiff, which resulted in an A1 C reading of 7.2. Both of those readings indicated a high flag for diabetes.

On May 2, 2016, plaintiff went to see Daub presenting complaints of a severe headache and other symptoms. Daub examined plaintiff, obtained a

---

[1] An A1C test measures the average glucose in blood over the past three months to determine the blood sugar level. The A1C Test & Diabetes, Nat'l Inst. of Diabetes and Digestive and Kidney Disease, U.S. Dep't of Health and Hum. Servs., http://www.niddk.nih.gov/health-information/diagnostic-tests/a1c-test (Apr. 2018).

A-3564-22

blood pressure reading, and listened to her heart. After the examination, Daub prescribed plaintiff medication for her headache and sent her home.

The following day, plaintiff's symptoms worsened, and she went to Virtua Hospital for evaluation and treatment. Plaintiff's blood glucose level was 493. She was diagnosed with diabetic ketoacidosis, admitted to the intensive care unit (ICU), and remained hospitalized from May 3, 2016 to May 8, 2016.

For the first time in August 2016, plaintiff obtained and reviewed her medical records in a chart from Daub. After reviewing her records and consulting with another physician, plaintiff claimed she learned about her "ongoing diabetic condition" and Daub's failure to diagnose and treat her for diabetes.

Plaintiff filed suit for medical malpractice on May 24, 2018. Prior to the close of discovery, defendants moved for summary judgment, arguing plaintiff's complaint was time barred. Plaintiff opposed defendants' motion. In plaintiff's opposing certification, she stated: "It was not until I obtained my medical records in [August 2016] and consulted with a new doctor that I discovered Dr. Daub had failed for years to diagnose/treat diabetes."

Following oral argument, the motion judge denied defendants' motion. In her statement of reasons, the judge found the relevant inquiry was whether

3

plaintiff's injury occurred on May 3, 2016, when she was diagnosed with diabetes or in August 2016, when plaintiff discovered Daub failed to diagnose her with diabetes. Viewing the facts in the light most favorable to plaintiff, the judge found "that a reasonable person may not discover that a cause of action exists regarding an ongoing, untreated medical condition until actually, the medical records are obtained by said person" and that plaintiff's "injury is the failure to diagnose, which [p]laintiff learned existed only in August of 2016."

Following the denial of defendants' summary judgment motion, discovery continued. During plaintiff's deposition, she testified while hospitalized in May 2016, a hospital doctor told her daughter that plaintiff had been diabetic since 2010.

The parties proceeded to a jury trial. Plaintiff presented three witnesses: plaintiff, expert witness Dr. David Liebert, and her neighbor Mary Jane Lopez. On direct examination, plaintiff testified that a doctor at the hospital told her daughter that she had "been diabetic since 2010." On cross-examination, plaintiff testified that she found out she was diabetic when she "got sick" and "went to the hospital." Defendants sought clarification of plaintiff's testimony through the following colloquy:

> [Defense counsel:] Is that – when you were in the
> hospital and you came to in the ICU and you learned

4

that you had been diagnosed with diabetes, was that when you first –

 . . .

[Defense counsel:]  Right.  In the hospital, before you were discharged home, when you were told you had diabetes, was this when you first thought that Daub might have made a mistake in treating you?

 . . .

[Defense counsel:]  Ms. Woody, when you came to in the hospital, when you were finally getting your wits about you a little bit more – are you with me?

[Plaintiff:]  Yes.

[Defense counsel:]  Before you were discharged home.

[Plaintiff:]  Um-hum.

[Defense counsel:]  You learned that a physician was now diagnosing you with diabetes, right?

[Plaintiff:]  Um-hum.

[Defense counsel:]  Is that a yes?

[Plaintiff:]  The hospital did.

[Defense counsel:]  Right.  Was that the first time that you thought maybe Dr. Daub didn't treat you appropriately?

[Plaintiff:]  He didn't.

[Defense counsel:]  And was that the first time you thought that?

5

[Plaintiff:] Yes.

At the close of plaintiff's case, defendants moved for a directed verdict pursuant to Rule 4:37-2(b), arguing plaintiff's complaint was barred by the statute of limitations. Following oral argument, the trial court granted the motion dismissing plaintiff's complaint with prejudice. The court reasoned: "I think it's clear and convincing that testimony was clear that at some point when the plaintiff was in the hospital, she understood that there was injury, and she understood that the fault lay with Dr. Daub." The court further reasoned: "Plaintiff's testimony was definitive. Said well maybe he didn't treat you right. [Plaintiff] said, he didn't. When did you know that, was when she was in the hospital."

## II.

On appeal, plaintiff presents the following issues for our consideration:

POINT I. DEFENDANTS FAILED TO MEET THE RULE 4:37-2(b) STANDARD.

POINT II. PLAINTIFF'S CLAIMS OF DR. DAUB'S FAILURE TO DIAGNOSE DIABETES OVER MANY YEARS ARE SEPARATE THAN HER CLAIMS RELATED TO SPECIFIC TREATMENT ON [MAY 2, 2016].

POINT III. THE PLAINTIFF'S CLAIMS RELATING TO A FAILURE OF INFORMED CONSENT SHOULD NEVER HAVE BEEN DISMISSED IN

6

DEFENDANT'S DISPOSITIVE MOTION SINCE THESE CLAIMS WEREN'T EVEN ADDRESSED.

POINT IV.  THE DISCOVERY RULE APPLIES AND PLAINTIFF'S COMPLAINT SHOULD BE REINSTATED.

POINT V.  THERE IS NO PREJUDICE TO THE DEFENDANT SINCE HE WAS ABLE TO PARTICIPATE IN A FULL TRIAL, OBTAIN AN EXPERT AND DEFEND THE CASE FOR 1,561 DAYS OF DISCOVERY.

POINT VI.  THE ISSUE OF WHEN THE DISCOVERY RULE TIMEFRAME BEGAN WAS NOT EXPLORED AT THE DEPOSITION OF PLAINTIFF.

We review a motion for a directed verdict de novo by applying the same standard governing trial judges.  Smith v. Millville Rescue Squad, 225 N.J. 373, 397 (2016).  Motions for a directed verdict at the close of plaintiff's case-in-chief made pursuant to Rule 4:40-1 or Rule 4:37-2(b) should be granted "only if, accepting the non-moving party's facts and considering the applicable law, 'no rational jury could draw from the evidence presented' that the non-moving party is entitled to relief."  Carbajal v. Patel, 468 N.J. Super. 139, 158 (App. Div. 2021) (quoting Pitts v. Newark Bd. of Educ., 337 N.J 331, 340 (App. Div. 2001)).  Thus, we must accept as true all evidence presented by plaintiff and the legitimate inferences drawn therefrom to determine whether the proofs are

sufficient to sustain a judgment in his or her favor. Monaco v. Hartz Mountain Corp., 178 N.J. 401, 413 (2004).

"[T]he judicial function here is quite a mechanical one. The trial court is not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the party opposing the motion." Dolson v. Anastasia, 55 N.J. 2, 5-6 (1969). Dismissal is appropriate when plaintiff has failed to provide evidence of an essential element of his or her claim. Pitts, 337 N.J. Super. at 340; see also Holm v. Purdy, 252 N.J. 384, 400 (2022); Smith, 225 N.J. at 397.

"To prove medical malpractice, ordinarily, 'a plaintiff must present expert testimony establishing (1) the applicable standard of care; (2) a deviation from that standard of care; and (3) that the deviation proximately caused the injury.'" Nicholas v. Mynster, 213 N.J. 463, 478 (2013) (quoting Gardner v. Pawliw, 150 N.J. 359, 375 (1997)). "In the case of a medical malpractice claim, suit must be filed within two years of the accrual date, which generally is the date of the negligent act or omission." Szczuvelek v. Harborside Healthcare Woods Edge, 182 N.J. 275, 281 (2005) (citing Martinez v. Cooper Hosp.-Univ. Med. Ctr., 163 N.J. 45, 52 (2000)); see also N.J.S.A. 2A:14-2(a). "[T]he determination of the accrual of a cause of action is an issue for the court." Barid v. Am. Med. Optics,

155 N.J. 54, 65 (1998) (citing <u>Fernandi v. Strully</u>, 35 N.J. 434, 439 (1961)). As the statutes of limitations accrued, at the very latest, on May 8, 2016, the limitations periods therefore expired on May 8, 2018.

The application of the discovery rule has long been recognized to "prevent the sometimes-harsh result of a mechanical application of the statute of limitations." <u>Martinez</u>, 163 N.J. at 52 (citing <u>Vispisiano v. Ashland Chem. Co.</u>, 107 N.J. 416, 426 (1987)). It is well established that the common law discovery rule is a rule of equity. <u>See Fernandi</u>, 35 N.J. 449-50; <u>see also Lopez v. Sawyer</u>, 62 N.J. 267, 273-74 (1973). Therefore, a plaintiff that seeks to invoke the application of the discovery rule bears the burden of showing "that a reasonable person in her [or his] circumstances would not have been aware, within the prescribed statutory period, that she [or he] had been injured by [the] defendant[']s" conduct. <u>Kendall v. Hoffman-La Roche, Inc.</u>, 209 N.J. 173, 197-98 (2012).

"At the heart of every discovery rule case is the issue of 'whether the facts presented would alert a reasonable person exercising ordinary diligence that he or she was injured due to the fault of another[.]'" <u>Kendall</u>, 209 N.J. at 191 (alteration in original) (quoting <u>Hardwicke v. Am. Boychoir Sch.</u>, 188 N.J. 69, 110 (2006) (Rivera-Soto, J., concurring in part and dissenting in part)). "[L]egal

A-3564-22

and medical certainty are not required for a claim to accrue." Id. at 193. "The standard is basically an objective one—whether plaintiff 'knew or should have known' of sufficient facts to start the statute of limitations running." Ben Elazar v. Macrietta Cleaners, Inc., 230 N.J. 123, 134 (2017) (quoting Caravaggio v. D'Agostini, 166 N.J. 237, 246 (2001)).

Plaintiff argues defendants failed to meet the Rule 4:37-2(b) standard because she did not learn Daub was at fault for her injury until August 2016 and as such, the discovery rule tolled the statute of limitations period until August 2016. We reject plaintiff's argument and conclude the judge properly granted defendant's motion for a directed verdict. The judge determined that plaintiff "definitively" testified she learned Daub neither properly treated nor diagnosed her with diabetes while hospitalized in May 2016. Based on the record, plaintiff need not have waited until she obtained the medical records in August 2016 to assess Daub's standard of care because she was diagnosed with diabetic ketoacidosis upon admittance into the ICU. Moreover, August 2016 could not reasonably be the commencement date for the statute of limitations because plaintiff testified that she learned that she was diabetic when she first went to the hospital on May 2, 2016, and the hospital physician told plaintiff's daughter that she had been diabetic since 2010.

Plaintiff's remaining arguments lack sufficient merit to warrant discussion in a written opinion.  See R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3564-22